Filed 1/29/14  P. v. Meza CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL MEZA,<br><br>    Defendant and Appellant. | B247900<br><br>(Los Angeles County<br>Super. Ct. No. TA122526) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed as modified with directions.

William L. McKinney and Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Rafael Meza was convicted of sex and sodomy with a child under age 10 in violation of Penal Code[1] section 288.7, subdivision (a), continuous sexual abuse of a child in violation of section 288.5, subdivision (a) and aggravated sexual assault of a child (sodomy) in violation of section 269, subdivision (a)(3). The trial court sentenced appellant to 65 years to life in prison, plus a determinate term of 16 years in prison.

Appellant appeals, contending the trial court erred prejudicially in admitting his interviews with police. Respondent contends the abstract of judgment must be corrected to reflect appellant's actual conviction on count 4 and the correct number of days of presentence custody credits. We correct the abstract of judgment and affirm the conviction on all other grounds.

FACTS

Beginning in August 2010, appellant sexually abused his step-daughter Alexia S. She was ten years old at the time. The abuse began one morning when someone touched Alexia's breast under her clothing while she was asleep. Alexia woke up, but the person fled. Later, she asked appellant if he had been in her room. He told her to sit on the sofa next to him. He rubbed her thighs, laid her on her back, took off her pants and underwear, took off his own pants and inserted his penis into her vagina. Alexia cried and begged him to stop. Appellant stopped after a couple of minutes. He said that he was sorry and would not do it again. Later that month, appellant again sexually assaulted Alexia on the sofa, inserting his penis into her vagina. Afterwards, he again promised not to repeat the behavior. Nevertheless, appellant did repeat the behavior once a week during the summer. The sexual abuse continued after Alexia went back to school. On one occasion, appellant forced Alexia to orally copulate him.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

After Alexia turned 11, in April, 2011, appellant began inserting his penis into her anus. This occurred in the living room. If Alexia seemed reluctant to comply, appellant would show her his belt. This happened two or three times a week.

On Friday, March 16, 2012, appellant picked up Alexia and her brothers at school. He asked Alexia if she was going to "give it to him." She ignored him. When they reached the house, appellant put the boys in the bedroom, went to the living room, and forcibly inserted his penis into Alexia's anus. Appellant later apologized, but Alexia did not believe him. She knew it would happen again.

On Monday, March 19, Alexia, wrote a note to a friend which stated, "My mom's husband sexually abused me." The friend told a teacher about the note. The teacher spoke with Alexia, who confirmed that appellant had sexually abused her. Alexia then went to the principal's office and told the principal that appellant had sexually and physically abused her. The principal saw yellowish bruising on Alexia's back, and called Alexia's mother, Martha.

Martha came to Alexia's school. She was shocked to learn of appellant's sexual abuse of Alexia. Martha took Alexia to the emergency room, where she was examined by a nurse specializing in forensics. Alexia gave the nurse an account of sexual abuse by appellant which was consistent with her trial testimony. The nurse observed a fully healed transection of the hymen which indicated previous penetrating trauma. This trauma was consistent with a penis entering the vagina. It was not consistent with digital penetration. No injuries were observed to Alexia's anus. The anus can accommodate penetration and heals quickly. The lack of an anal injury did not contradict Alexia's account of abuse.

Los Angeles County Sheriff's Deputy Cristina Cordova interviewed Alexia at the hospital. Alexia was withdrawn and crying. Alexia's description of appellant's abuse was generally consistent with her trial testimony.

While Alexia was at the hospital, appellant called Martha. Martha said that Alexia fainted at school because she was dehydrated and she needed intravenous fluids.

3

Sergeant Paul Valle, then a detective in the Sheriff's Department's Special Bureau, interviewed Alexia at the district attorney's office. Alexia was sad and broke down into tears. She told him what appellant had done to her.

Appellant was arrested. Sergeant Valle interviewed appellant twice on March 20, 2012, while appellant was in custody. Sergeant Valle did not advise appellant of his *Miranda*[2] rights before the first interview. He did do so before the second interview. Both interviews were ultimately admitted at trial. In both interviews, appellant admitted that he rubbed his penis against Alexia's anus or vagina on three or four occasions after she turned 11. He denied ever penetrating her. A recording of the second interview was played for the jury.

Appellant testified on his own behalf at trial, and denied ever rubbing his penis against Alexia. He denied any form of sexual abuse. Appellant claimed that he was pressured into making the statements about rubbing by Sergeant Valle. Appellant also testified that he and Alexia did not have a good relationship.

Appellant's brother and his sister-in-law both testified at trial that Martha told them that Alexia had complained to her about appellant's sexual abuse. Both testified that Martha said she did not believe Alexia.

Appellant's mother testified that on four occasions in 2009 she saw Alexia looking through the keyhole into appellant's and Martha's bedroom in the middle of the night. Appellant's stepfather testified that in 2009 or 2010, he saw Alexia watching pornography on television on three occasions.

In rebuttal, Sergeant Valle testified about the circumstances of his interviews with appellant. A recording of the first interview was played for the jury.

---

[2] *Arizona v. Miranda* (1966) 384 U.S. 436.

4

# DISCUSSION

## 1. Appellant's confessions

After appellant was taken into custody, he was interviewed by Sergeant Valle at the Central Regional Detention Facility. The sergeant did not read appellant his rights under *Miranda*. Appellant made incriminating statements. Sergeant Valle left the interview room, returned, told appellant his DNA sample was going to be taken, asked if appellant had any messages for his wife or the victim and left the room. After 30 to 45 minutes, Sergeant Valle interviewed appellant in a different room. This interview began with the sergeant reading appellant his *Miranda* rights, which appellant waived. Appellant again made incriminating statements.

Appellant moved to exclude both interviews with police. Appellant contended that his first interview should be suppressed because he was not advised of his *Miranda* rights, and the second interview should be suppressed because the police deliberately used a two-step process to circumvent *Miranda*. He also claimed the admissions made in both interviews were involuntary.

The court denied appellant's motion as to the second interview, finding that Sergeant Valle did not use a deliberate two-step process to circumvent *Miranda*. The court found appellant's statements were voluntary. Although the first statement was voluntary, the court ruled that "[t]he first statement, because it wasn't *Mirandized*, that wasn't going to come in." Later, appellant moved to admit the first interview to give context to the second interview, which was admitted during the prosecution's case-in-chief. Before the court ruled on this request, the prosecutor stated that it would use the first interview in rebuttal.

Appellant contends the trial court erred in admitting both statements to the sergeant.

5

a. Applicable law

The United States Supreme Court has twice considered the admissibility of a "second" confession made after the suspect has received a *Miranda* warning and also after the suspect has made an earlier unwarned confession. (*Oregon v. Elstad* (1985) 470 U.S. 298; *Missouri v. Seibert* (2004) 542 U.S. 600.) These are often called "midstream" *Miranda* cases.

In *Elstad*, the Court explained that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" concerning the second, postwarning confession. (*Oregon v. Elstad, supra,* 470 U.S. at p. 314.) A "suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." (*Id*. at p. 318.) A "careful and thorough" midstream warning "ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." (*Id*. at pp. 310, 314.) In such circumstances, "the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as 'an act of free will.' [Citation.]" (*Id*. at p. 311.)

In *Seibert*, the Court considered the situation where a midstream *Miranda* warning was given as part of deliberate two-step interrogation technique designed to circumvent the protections of *Miranda*. (*Missouri v. Seibert*, *supra*, 542 U.S. 600.) *Seibert* is a plurality opinion, with the narrowest opinion being written by Justice Kennedy. "[B]oth the plurality and Justice Kennedy agree that where law enforcement officers *deliberately* employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warning are absent or fail to apprise a *reasonable* person in the suspect's shoes of his rights, the trial court should suppress the confession."

6

(*United States v. Williams* (9th Cir. 2006) 435 F.3d 1148, 1158; *People v. Camino* (2010) 188 Cal.App.4th 1359, 1369-1370.) "In situations where the two-step strategy was not deliberately employed, *Elstad* continues to govern the admissibility of postwarning statements. [Citations.]" (*U.S. v. Williams, supra,* 435 F.3d at p. 1158.)

Factors which should be considered in determining whether an interrogator used a deliberate two-step strategy include subjective evidence such as the officer's testimony and objective evidence such as "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." (*People v. Camino, supra*, 188 Cal.App.4th at p. 1370.)

"[T]he trial court's determination of deliberateness is a factual finding entitled to deference. . . . California reviewing courts are bound by the trial court's factual findings if supported by substantial evidence (as compared to the clear error standard applicable in federal courts), and we must accord ""'great weight'"" to the trial court's conclusions. [Citation]." (*People v. Camino, supra*, 188 Cal.App.4th at p. 1372.)

"[W]here the court finds deliberateness to be absent, 'the admissibility of post-warning statements should continue to be governed by the principles of *Elstad*.' *Id*. at p. 622, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment)." (*U.S. v. Williams*, supra, 435 F.3d at p. 1161.)


b. The court's finding of lack of deliberateness is supported by substantial evidence


The trial court considered both objective and subjective factors in reaching its conclusion that Sergeant Valle did not deliberately delay giving a *Miranda* warning.

The court found that there were two interviews, an objective fact which weighs against a finding of deliberateness. This finding is supported by substantial evidence. The court found the first interview ended almost immediately after Sergeant Valle told appellant his DNA sample would be taken. The sergeant then asked appellant if there was anything appellant wanted him to tell appellant's wife, a question which signaled the end of the interview. The sergeant left after confirming appellant's message to his

7

family.  The court found credible Sergeant Valle's testimony that he left the jail, drove onto the freeway, realized he had forgotten to *Mirandize* appellant, and then returned to the jail.  The court also found that in the sergeant's absence, appellant had been moved in order to be put back into his cell.  Thirty to forty minutes elapsed before Sergeant Valle spoke with appellant again, and this interview took place in a different interview room.

The court found credible Sergeant Valle's testimony that he did not employ "any type of two step process" but simply forgot to give the *Miranda* warnings and realized his mistake only when he was on the freeway.  This is a subjective factor which supports a finding of lack of deliberateness.  Sergeant Valle also testified that he had only forgotten to give a *Miranda* warning a few times in his career and that the Sheriff's Department did not have a policy of deliberately delaying *Miranda* warnings.  These statements also support a finding of lack of deliberateness.

The only possible factors which weighed in favor of a finding of deliberateness were the continuity of personnel and the overlap in content between the two interviews.  The overlap in content was not significant, as Sergeant Valle brought in new topics as well in the second interview, such as the type of underwear appellant wore, appellant's phone calls with his wife discussing the victim's hospital visit, and whether appellant had considered going to a prostitute.  We defer to the trial court's implied finding that the factors showing no deliberateness outweighed these two minor factors.  (See *People v. Camino*, *supra*, 188 Cal.App.4th at p. 1372.)

c.  Appellant's first confession was voluntary

Since Sergeant Valle did not deliberately delay appellant's *Miranda* warning, the admissibility of appellant's second statement is analyzed under *Elstad v. Oregon, supra,* 470 U.S. 298.  (*U.S. v. Williams, supra*, 435 F.3d at p.1158.)

The first step in an *Elstad* analysis is determining the voluntariness of the first, unwarned confession.  Here, the trial court found that both of appellant's interviews were voluntary.

"Under both state and federal law, courts apply a 'totality of circumstances' test to determine the voluntariness of a confession. [Citations.] Among the factors to be considered are '"the crucial element of police coercion [citation]; the length of the interrogation [citation]; its location [citation]; its continuity" as well as "the defendant's maturity [citation]; education [citation]; physical condition [citation]; and mental health."' [Citation.] On appeal, the trial court's findings as to the circumstances surrounding the confession are upheld if supported by substantial evidence, but the trial court's finding as to the voluntariness of the confession is subject to independent review. [Citations.] In determining whether a confession was voluntary, '[t]he question is whether defendant's choice to confess was not "essentially free" because his will was overborne.' [Citation.]" (*People v. Massie* (1998) 19 Cal.4th 550, 576.)

After an independent review of the record, we agree with the trial court that, under the totality of circumstances, both of defendant's confessions were voluntary.

The interviews were not lengthy. The first interview resulted in 71 pages of transcript. Appellant estimates that it lasted 90 minutes. The second interview was half the length of the first. Appellant was in his thirties and had prior experience with police interviews, and even referred to those prior interviews during the current interviews. There is nothing to indicate that appellant had any mental health issues, language difficulties or comprehension problems. These factors all weigh in favor of voluntariness. The interview took place in jail, which weighs slightly against voluntariness. Sergeant Valle used some ploys, which also weighs against voluntariness.[3]

Appellant contends that his first unwarned confession was not voluntary because Sergeant Valle engaged in a "protracted series of interrogation tactics" which were intended to, and did, elicit an incriminating response. He contends that "these tactics

---

[3] The trial court found that none of these ploys were "so overwhelming" as to render appellant's statements involuntary. We consider these ploys below, and agree with the trial court that none of the ploys, such as bluffing, rendered appellant's statements involuntary.

9

have been found to be, under all the circumstances, 'so coercive that they tend to produce a statement that is both involuntary and unreliable.' [Citation.]"

It was undisputed that Sergeant Valle's questioning during the first interview was "interrogation" and was designed to elicit an incriminating response from appellant. The record confirms that Sergeant Valle did use a variety of interrogation tactics.

None of the tactics used by Sergeant Valle was inherently coercive. Some of the tactics can be employed in a coercive manner which will render a subsequent confession involuntary. None of those tactics was employed in such a manner in this case.

i. Rapport building

Appellant complains that Sergeant Valle engaged in improper and coercive rapport building.

It is not "inherently coercive for an interrogator to attempt to form a rapport with the suspect." (*People v. Williams* (2010) 49 Cal.4th 405, 447.) Appellant points out, correctly, that rapport building can be coercive under some circumstances. (*People v. Honeycutt* (1977) 20 Cal.3d 150, 159-161.) In *Honeycutt*, one of the arresting officers had known the suspect for ten years and during the initial portion of the interrogation, the officer "discussed unrelated past events and former acquaintances." (*Id*. at p. 158.) The officer also disparaged the victim. (*Ibid*.) Further, the officers apparently engaged in a "Mutt and Jeff" routine where one officer is hostile and aggressive, then leaves and the second officer "seeks to gain [the suspect's] confidence by disapproving his partner's behavior." (*Id*. at p. 160, fn. 5.)

Those circumstances are not present here. Sergeant Valle did not have a prior acquaintance with appellant, and so could not discuss common past events or acquaintances to ingratiate himself with appellant. Although Sergeant Valle was sometimes sympathetic and sometimes accusatory during the interview, he was the only interviewing officer and could not gain appellant's confidence by engaging in a "Mutt and Jeff" routine and disapproving of his own behavior. We do not understand the

10

sergeant's statement that the victim looked like a teenager to be a disparaging remark, particularly since at the time of the interview Alexia was just one year shy of being a teenager. Asking if the victim "came on" to appellant or was "flirtatious" were questions, not accusations. Even suggesting that the victim was a little "flirtatious" is not disparaging. Thus, appellant's reliance on *People v. Honeycutt, supra*, 20 Cal.3d 150 is misplaced. (See *People v. Scott* (2011) 52 Cal.4th 452, 478 [reliance on *Honeycutt* misplaced because there was no prior relationship between officer and suspect and no victim disparagement].)

## ii. Exhortations to tell the truth

Appellant contends that Sergeant Valle was coercive when he exhorted appellant to tell the truth. General exhortations to a suspect to tell the truth are permissible. (*People v. Tully* (2012) 54 Cal.4th 952, 993.) They can be improper if accompanied by a promise of leniency in exchange for telling the truth. (*Ibid.*) Appellant has not identified, and we have not found, any instances of Sergeant Valle promising appellant leniency in exchange for the truth. Further, appellant acknowledged he knew the sergeant was not going to help him.

## iii. Bluffing

Appellant contends that Sergeant Valle lied to him by saying that his DNA had been found on or in the victim's anus. Appellant is correct that the sergeant made this false statement.

The general rule is that a confession or admission obtained by subterfuge or deceit may nevertheless be admissible, so long as the subterfuge or deceit is not a type that is reasonably likely to produce a false statement. (*People v. Williams, supra*, 49 Cal.4th at p. 433.) Here, it is clear that the mention of the DNA did not overcome appellant's will.

11

Sergeant Valle stated appellant's DNA had been found on the victim, and implied that the DNA had come from inside the victim's anus and was recent. Sergeant Valle suggested repeatedly that something had happened the previous Friday, but appellant was adamant that it had not. Sergeant Valle asked appellant repeatedly if he had penetrated the victim. Even after appellant admitted to rubbing up against the victim with his penis, he denied penetrating her. He suggested that maybe the victim acquired his DNA by touching something in the shower or by sitting on the couch after appellant had masturbated there in the past. He denied that the rubbing would have left his DNA on the victim. (See *People v. Williams, supra*, 49 Cal.4th at p. 444 ["Significantly, . . . defendant did not incriminate himself as a result of the officer's remarks."].)

Further, appellant resisted making any incriminating statements for a considerable period of time. When he did make an incriminating statement, it followed Sergeant Valle's description of the victim's suffering and an exhortation to help the victim by admitting what had happened. Appellant's admissions began with the statement that the victim "deserves better." If anything, it was the references to the victim's unhappiness which motivated appellant. Even then, he admitted only to committing lewd acts, minor crimes compared to the charges of rape and sodomy. (See *People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 58 [defendant's "resistance, far from reflecting a will overborne by official coercion, suggests instead a still operative ability to calculate his self-interest in choosing whether to disclose or withhold information."].)

iv. Other tactics

Appellant also complains that throughout the interview, Sergeant Valle used innocuous questions, accusations, arguments that confession has healing powers, exhortations to "be a man," minimization of the charges and of appellant's responsibility for the crimes and requests for information as interrogation tactics, which were intended to and did elicit in incriminating response. He further complains that these tactics "have

12

been found to be, under all the circumstances, 'so coercive that the they tend to produce a statement that is both involuntary and unreliable.' (*People v. Williams*[, *supra*,] 49 Cal.4th [at p.] 443 . . . .)"

Appellant has taken a partial quote out of context. The Court in *Williams* stated, """The courts have prohibited only those psychological ploys which, under all the circumstances, are so coercive that they tend to produce a statement that is both involuntary and unreliable."""" (*People v. Williams*, *supra*, 49 Cal.4th at p. 443.)

None of the above listed tactics is inherently so coercive as to render any incriminating statement during an interview involuntary and unreliable. Appellant has not made a showing that the above listed tactics were "so coercive" under the circumstances of this case as to tend to produce an involuntary statement.


### d. Appellant's second, *Mirandized* confession was admissible


As we have discussed, appellant's statements in his second interview were voluntary. Sergeant Valle fully and correctly informed appellant of his *Miranda* rights and appellant waived those rights before that second interview. Under *Oregon v. Elstad, supra,* 470 U.S. 298, appellant's second confession was admissible.

"[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights." (*Oregon v. Elstad, supra,* 470 U.S. at p. 314.)

Appellant has not identified any facts showing that his circumstances are not ordinary and require a departure from the general rule. To the extent that appellant contends that he was unable to give a fully informed waiver of his rights because he was

13

unaware that his prior statement could not be used against him, appellant is mistaken. There is no requirement that an officer give a warning concerning limitations on the use of the earlier statement in addition to the standard *Miranda* warnings. "Such a requirement is neither practicable nor constitutionally necessary." (*Oregon v. Elstad, supra,* 470 U.S. at p. 316.) "Police officers are ill-equipped to pinch-hit for counsel, construing the murky and difficult questions of when 'custody' begins or whether a given unwarned statement will ultimately be held admissible. [Citation.]" (*Id*. at p. 316.)

### e. Appellant's first confession was also admissible for impeachment

As we have discussed, appellant's first confession, although unwarned, was otherwise voluntary. The prosecution used the interview during its rebuttal case.[4]

Generally, voluntarily given statements obtained in violation of *Miranda* are admissible to impeach a defendant's trial testimony. (*Harris v. New York* (1971) 401 U.S. 222, 224; *People v. Peevy* (1998) 17 Cal.4th 1184, 1193.)

Here, appellant testified at trial and denied molesting the victim in any way. He claimed that he only made the incriminating statement in the second interview because Sergeant Valle pressured him, threatened him with the loss of his family, and promised leniency. He also claimed that Sergeant Valle screamed at him and hit the table, and he was afraid the sergeant was going to hit him. Thus, the contents of the first interview were relevant to impeach appellant.

---

[4] Appellant's trial counsel sought to play the first interview during the defense case to provide context for the second interview, which the jury had already heard. Before the trial court ruled on this request, the prosecution announced its intent to use the interview in rebuttal. Appellant contends, correctly, that he may still claim error in the admission of the first interview. (*People v. Venegas* (1998) 18 Cal.4th 47, 94 ["'An attempt to attack the merits of damaging testimony to which a party has unsuccessfully objected has long been recognized as a necessary and proper trial tactic, and it may not be deemed a waiver of a continuing objection.'"].)

Appellant has not explained why his first statement should be treated differently than the norm, and has cited no cases requiring exclusion of a voluntarily given but unwarned statement in circumstances similar to those in this case. Accordingly, his claim fails.

2. Abstract of judgment

The abstract of judgment shows that appellant was convicted in count 4 of violating section 288.7, subdivision (a). Count 4 of the information charged appellant with a violation of section 269, subdivision (a)(3). The jury convicted appellant of that charge. The abstract of judgment must be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

The trial court awarded appellant 373 days of actual custody and 57 days of custody credit for a total of 430 days. Appellant was arrested on March 20, 2012 and sentenced on April 2, 2013. Thus, he served 378 days of actual custody. He is entitled to 56 days of custody credit, for a total of 434 days of presentence credit.

DISPOSITION

The abstract of judgment is ordered corrected to show that appellant was convicted in count 4 of aggravated sexual assault of a child (sodomy) in violation of section 269, subdivision (a)(3). The abstract is also ordered corrected to show that appellant has 378 days of actual custody, 56 days of custody credit and 434 total days or presentence credits. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting these corrections and to deliver a copy to the Department of Corrections and Rehabilitation. We affirm the judgment of conviction in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P. J.

MOSK, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16